**Carl A. SEIFERT, Plaintiff,**

**v.**

**Stewart L. UDALL, Secretary of the Interior, and the Confederated Salish and Kootenai Tribes of the Flathead Indian Reservation, and the United States of America, Defendants.**

**Civ. No. 1556.**

United States District Court
D. Montana,
Missoula Division.

Feb. 29, 1968.

Christian & McCurdy and Douglas D. Dasinger, Polson, Mont., for plaintiff.

Moody Brickett, U. S. Atty., Butte, Mont., for defendant Udall & United States.

Wilkinson, Cragun & Barker, Dept. of Justice, Washington, D. C., and George F. Higgins, Missoula, Mont., for Confederated Salish, etc. Tribe.

## OPINION AND ORDER

RUSSELL E. SMITH, District Judge.

Plaintiff, the successor to a Flathead Indian allotee, who had secured a patent to land bordering Flathead Lake on the Flathead Indian Reservation in Montana, brings this action to determine his rights in lands lying between the lake's high and low water marks. The resolution of plaintiff's problems would of necessity involve an examination of the rights of the Indians and the United States as trustee for them.[1]

The defendant, Confederated Salish and Kootenai Tribes of the Flathead Reservation, moves to dismiss the amended complaint on the ground that the court has no jurisdiction. The motion must be granted. This court is one of limited jurisdiction.[2]

The jurisdiction of the District Court, relative to Indian allotments, is mentioned in two sections of the code, 28 U.S.C. § 1353, 62 Stat. 934[3] and 25 U.S.C. § 345.[4] Both sections originated in the Act of August 15, 1894,[5] as amended by the Act of February 6, 1901, 31 Stat. 760.[6] 25 U.S.C. § 345 as it exists today

---

1. See Montana Power Co. v. Rochester, 127 F.2d 189 (9 Cir. 1942).

2. Wright, Federal Courts 14 (1963).

3. "The district courts shall have original jurisdiction of any civil action involving the right of any person, in whole or in part of Indian blood or descent, to any allotment of land under any Act of Congress or treaty.

    "The judgment in favor of any claimant to an allotment of land shall have the same effect, when properly certified to the Secretary of the Interior, as if such allotment had been allowed and approved by him; * * *."

4. "All persons who are in whole or in part of Indian blood or descent who are entitled to an allotment of land under any law of Congress, or who claim to be so entitled to land under any allotment Act or under any grant made by Congress, or who claim to have been unlawfully denied or excluded from any allotment or any parcel of land to which they claim to be lawfully entitled by virtue of any Act of Congress, may commence and prosecute or defend any action, suit, or proceeding in relation to their right thereto in the proper district court of the United States; and said district courts are given jurisdiction to try and determine any action, suit, or proceeding arising within their respective jurisdictions involving the right of any person, in whole or in part of Indian blood or descent, to any allotment of land under any law or treaty (and in said suit the parties thereto shall be the claimant as plaintiff and the United States as party defendant); and the judgment or decree of any such court in favor of any claimant to an allotment of land shall have the same effect, when properly certified to the Secretary of the Interior, as if such allotment had been allowed and approved by him, * * *."

5. 28 Stat. 286, 305 (1894).

6. The Act of February 6, 1901 did no more than add the words "and in said suit the parties thereto shall be the claimant as plaintiff and the United States as party defendant." 31 Stat. 760.

is the Act of August 15, 1894, as so amended.[7]

At the time of the enactment of the Judicial Code of 1911,[8] that portion of the statutory law relevant here (Act of February 6, 1901), did three things; it gave the Indians rights to sue for allotments, vested jurisdiction in the circuit court, and provided the form of the judgment. The jurisdiction was clearly restricted to the actions mentioned in the Act, i. e., by Indians against the United States to secure allotments.[9]

Plaintiff urges that the language of 28 U.S.C. § 1353 is broader than the language of 25 U.S.C. § 345, and that the jurisdiction granted by the former is not limited to actions by Indians against the United States in which the question is the initial right to an allotment. Plaintiff urges that a title comprises two elements, quantity and quality, and that this action involves the quality of the title and requires a determination of the rights vested in the Indian allotee (plaintiff's predecessor) by the patent. According to the plaintiff, the action, therefore, involves the right of an Indian to an allotment within the meaning of the first paragraph of 28 U.S.C. § 1353.

The substance of the first paragraph of 28 U.S.C. § 1353 initially appeared in the Judicial Code of 1911[10] as paragraph 24 of Section 24 of Chapter II. While the words differ from the words employed in the Act of 1894, as amended, the description of the subject matter as to which jurisdiction is granted are identical in both Acts, i. e.,

"involving the right of any person, in whole or in part of Indian blood or descent, to any allotment of land under any law or treaty."

In the Senate Report[11] on the Judicial Code of 1911, where paragraph 24 of Section 24 of Chapter II is set out, a citation to the Act of August 15, 1894 is given. On the right hand page opposite the text of paragraph 24 the equivalent language from the Act of August 15, 1894, is set out in full. The language of paragraph 24 was a paraphrase of the jurisdictional language of the Act of 1894 and that is what Congress intended it to be. This jurisdictional language, torn out of the limiting context of the Act of 1894, could, standing alone, be interpreted to be broader than the Act of 1894. There is, however, nothing in any of the legislative history indicating any intention to change the law except to transfer jurisdiction to the district court. Under these circumstances, the Judicial Code itself provides the interpretation:

"The provisions of this Act, so far as they are substantially the same as existing statutes, shall be construed as continuations thereof, and not as new enactments, and there shall be no implication of a change of intent by reason of a change of words in such statute, unless such change of intent shall be clearly manifest."[12]

The second paragraph of 28 U.S.C. § 1353 which appeared in the Act of 1894 as amended, was omitted from the Judicial Code of 1911 as initially enacted. The second paragraph was replaced, however, by the Act of December 21, 1911.[13] This paragraph bespeaks a congressional intention to confine the jurisdiction

---

7. The Judicial Code of 1911, 36 Stat. 1087, did abolish the circuit courts and vest their former jurisdiction in the district courts and somewhere along the line the word "hereby" was deleted and a date "August 15, 1894" substituted for the word "now", but otherwise the Code provision is identical with the Act. 36 Stat. 1167.

8. 36 Stat. 1087.

9. United States v. Eastman, 118 F.2d 421 (9 Cir.1941), cert. den. 314 U.S. 635, 62 S.Ct. 68, 86 L.Ed. 510 (1941).

10. 36 Stat. 1087, 1094.

11. S.Rep. No. 338, 61st Cong., 2d Sess., Part II, 62–3 (1911).

12. 36 Stat. 1087, 1167 (1911).

13. 37 Stat. 46 (1911).

granted by the Judicial Code of 1911 to that which previously existed. The only judgment mentioned in § 1353 would not be appropriate in any action other than the action mentioned in 25 U.S.C. § 345, and certainly the judgment mentioned by the second paragraph of § 1353 would not do here.

In the course of the codification, the basic law was never expressly repealed and hence the same subject is treated in two places in slightly different language.[14] The court is of the opinion, however, that insofar as the jurisdiction of the court is concerned, 25 U.S.C. § 345 and 28 U.S.C. § 1353 are equivalent in meaning,[15] and that the court does not have jurisdiction.

Stewart Udall, Secretary of the Interior, moves to dismiss on the ground that the court has no jurisdiction and that the complaint fails to state a claim as to him. It is not alleged that Udall has done anything either personally or through his subordinates. The United States does hold as trustee whatever title the Indians as a tribe may have to the land between the high and low water marks of Flathead Lake (within the reservation, of course). The relief nominally sought against the Secretary of the Interior is actually relief sought against the sovereign because if a judgment favorable to the plaintiff were entered it would affect the title of the United States as trustee. The United States has not consented to be sued and the action must fail.[16]

The motions to dismiss are granted. The action is dismissed, and it is ordered that plaintiff be denied all relief.

---

14. The Judicial Code of 1948, 62 Stat. 934, resulted in further minor language changes.

15. This is the reasoning of Henrietta First Moon v. Starling White Tail and United States, 270 U.S. 243, 46 S.Ct. 246, 70 L.Ed.2d 565 (1926); Prairie Band of Pottawatomie Tribe of Indians v. Puckkee, 321 F.2d 767, 770 (10 Cir. 1963).

---

16. State of Minnesota v. United States, 305 U.S. 382, 59 S.Ct. 292, 83 L.Ed. 235 (1939); Dugan v. Rank, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963); Goldberg v. Daniels, 231 U.S. 218, 34 S.Ct. 84, 58 L.Ed. 191 (1913).