**Kenneth K. LIND et al., Plaintiffs,**

**v.**

**Elmer B. STAATS, Comptroller General of the United States, et al., Defendants.**

**No. 49680.**

United States District Court
N. D. California.

Aug. 7, 1968.

Quentin L. Kopp, E. Myron Bull, Jr., San Francisco, Cal., for plaintiffs.

Cecil F. Poole, U. S. Atty., John J. Bartko, Asst. U. S. Atty., San Francisco, Cal., for defendants.

## MEMORANDUM AND ORDER

OLIVER J. CARTER, District Judge.

Before the Court is plaintiffs' application for a preliminary injunction. A temporary restraining order and an order to show cause was heretofore issued on July 26, 1968, and was made returnable on August 6, 1968.

Plaintiff Kenneth K. Lind is a general contractor maintaining a general contracting business in San Francisco, California, and he attempted to prepare and submit a bid on project #88012 relating to remodeling work for the installation of a Teleconcentrator Center for the General Services Administration in San Francisco. In his complaint he alleges that on or about May 24, 1968, the defendants Hannon, Weber and Wilson, or one, or more of them, caused to be published or to be delivered to each plaintiff an invitation for bids for the remodeling of the building involved. He further alleges that subsequently each of the plaintiffs timely submitted a bid in response to said invitation, and that when the bids were opened on June 25, 1968, the low bidder was Wilco Construction Co. He alleges further that on July 2, 1968, before any award of contract plaintiffs protested the prospective award of the contract to Wilco by telegram to defendants Hannon and Staats. The complaint further alleges that the instant action was delayed by plaintiffs pending action on the protest in order that plaintiffs might properly exhaust their administrative remedies and in the belief, based upon telephone statements made to plaintiffs' counsel by defendant Weber and by attorneys employed by defendant Staats, that no award of contract would be made while the protest was pending, and no decision on the protest would occur until the office of the Comptroller General had received a full report from the San Francisco office of the General Service Administration. On or about July 24, 1968, defendants awarded the contract on the project to Wilco Construction Co. After alleging that the award of the contract is to be governed by 41 U.S.C.A. § 253, which provides that the award "shall be made * * * to that responsible bidder whose bid * * * will be most advantageous to the Government, price and other factors considered", the complaint goes on to allege on information and belief that none of the defendants made any determination that Wilco was a responsible bidder, or that Wilco's bid was the most advantageous to the government; whereby defendants failed to exercise the discretion vested in them by statute.

By virtue of these allegations plaintiffs contend that unless defendants are compelled to cancel their award of contract to Wilco plaintiffs will be injured in that (a) funds of the United States will be paid to Wilco in excess of that which would be required to be paid under fair and competitive bidding to the detriment of the plaintiffs as federal taxpayers, and (2) that the plaintiffs, and each of them, will be deprived of their opportunity to engage in fair and competitive bidding for the award of the contract. The complaint alleges that the plaintiffs have no adequate remedy at law, or by administrative action, and that immediate and irreparable damage will occur unless the injunctive relief is granted.

In the second claim for relief plaintiffs claim that the defendants in awarding the contract to Wilco violated a number of the provisions of the Code of Federal Regulations being cited as 41 CFR sections 1–1.301–5, 1–1.317, 1–2.-404–1, 1–2.402–2, and 1–2.407–8. The gist of these allegations is that the defendants did not make adequate determinations under the appropriate regulations to ascertain the integrity of Wilco, and that no determination was made as to whether the bids were made under collusive bidding, or fairly under open competition, and that the contract was awarded before giving notice to the protestants as required by the provisions of section 1–2.407–8(b) (3).

The complaint asks (1) for a temporary restraining order and thereafter a preliminary injunction restraining defendants, and any of their agents or employees, from taking any further action pursuant to the award of the contract on the project to Wilco Construction Co. pending the trial of this matter, and (2) that the defendants, and their agents or employees, be permanently restrained from executing the contract with Wilco and that they be ordered to cancel the award of the contract to Wilco, and that they be ordered to reject all bids, and if the United States desires to re-advertise, that such bids be considered in full compliance with all laws and regulations.

At the hearing on the application for the preliminary injunction plaintiffs incorporated the allegations of their complaint and the affidavits of Kenneth K. Lind and Quentin L. Kopp as evidence in support of the application. Quentin L. Kopp was sworn and testified as a witness, and testified substantially that he had filed a protest, and had been advised that he would be given advance notice of the intention to award the contract, and that on July 23, 1968, he was advised at 2:30 o'clock p. m. by Mr. Wilson that the contract had been awarded at 11:00 o'clock a. m. on the same day; that he received a letter on July 26, 1968, dated July 23, 1968, which advised him that the contract could be awarded pending the determination of the protest. This letter is in evidence and marked plaintiff's exhibit 1.

This action was filed on July 26, 1968. Mr. Kopp further testified that had he had notice of the intention to award the contract he would have filed the action as soon thereafter as possible in order to bring the matter to issue. The government did not offer any evidence. Plaintiffs asked that the preliminary injunction be issued, and the government asked that the temporary restraining order be vacated, and that no preliminary injunction issue.

Citing Covington v. Schwartz, 341 F. 2d 537 (Cir. 9, 1965) the government contends that to invoke the equitable jurisdiction of this Court plaintiffs must show (1) that there is a strong likelihood of success, (2) irreparable injury, and (3) no harm to the public interest.

On the matter of likelihood of success the government cites the case of Perkins v. Lukens Steel Corporation, 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108, and Friend v. Lee, 95 U.S.App.D.C. 224, 221 F.2d 96 (1955). In *Perkins* the Supreme Court was interpreting the Public

Contracts Act of June 30, 1936, and it said, 310 U.S. at page 129, 60 S.Ct. at page 877:

"In this legislation Congress did no more than instruct its agents who were selected and granted final authority to fix the terms and conditions under which the Government will permit goods to be sold to it. The Secretary of Labor is under a duty to observe those instructions just as a purchasing agent of a private corporation must observe those of his principal. In both instances prospective bidders for contracts derive no enforceable rights against the agent for an erroneous interpretation of the principal's authorization. For erroneous construction of his instructions, given for the sole benefit of the principal, the agent is responsible to his principal alone because his misconstruction violates no duty he owes to any but his principal. The Secretary's responsibility is to superior executive and legislative authority. Respondents have no standing in court to enforce that responsibility or to represent the public's interest in the Secretary's compliance with the Act."

In the *Friend* case the Court of Appeals for the District of Columbia was involved in reviewing the administrative acts of Frederick B. Lee, Administrator of the Civil Aeronautics Administration, and Bennett H. Griffin, Director of the Washington National Airport, in approving a contract giving an exclusive concession to an operator of an automobile rental service. One of the contentions was that the exclusive contract was illegal on the ground that it was entered into without previous advertising for proposals as was required by 41 U.S.C.A. § 5. The court said:

"Statutes regulating the contracting procedures of officers of the Federal Government are enacted solely for the benefit of the Government and confer no enforceable rights upon persons dealing with it. Perkins v. Lukens Steel Co., 1940, 310 U.S. 113, 126, 60

S.Ct. 869, 84 L.Ed. 1108. In consequence, plaintiff cannot contest the award of the contract to Avis, either as a bidder or in his capacity as a citizen generally. B. F. Cummins Co. v. Burleson, 1913, 40 App.D.C. 500; Champion Coated Paper Co. v. Joint Committee on Printing, 1917, 47 App. D.C. 141; Walter P. Villere Co. v. Blinn, 5 Cir., 1946, 156 F.2d 914; O'Brien v. Carney, D.C.D.Mass.1934, 6 F.Supp. 761; cf. Royal Sundries Corp. v. United States, D.C.E.D.N.Y. 1953, 111 F.Supp. 136; Id., D.C.E.D. N.Y.1953, 112 F.Supp. 244." (221 F.2d 100)

Against these authorities plaintiffs cite the recent case of Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947, decided June 10, 1968, which overrules Frothingham v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923). *Flast* gives a taxpayer standing to sue in cases involving First Amendment constitutional violations. At page 1955 of 88 S.Ct. the court said:

"We have noted that the Establishment Clause of the First Amendment does specifically limit the taxing and spending power conferred by Art. I, § 8. Whether the Constitution contains other specific limitations can be determined only in the context of future cases. However, whenever such specific limitations are found, we believe a taxpayer will have a clear stake as a taxpayer in assuring that they are not breached by Congress. Consequently, we hold that a taxpayer will have standing consistent with Article III to invoke federal judicial power when he alleges that congressional action under the taxing and spending clause is in derogation of those constitutional provisions which operate to restrict the exercise of the taxing and spending power."

The government contends that *Flast* should be limited to its constitutional context. This would appear to be the thrust of the holding of the majority decision, and it appears to be the clearcut

statement of some of the concurring Justices. Mr. Justice Fortas said:

"There is no reason to suggest, and no basis in the logic of this decision for implying, that there may be other types of congressional expenditures which may be attacked by a litigant solely on the basis of his status as a taxpayer."

Mr. Justice Stewart concluded his concurring opinion by saying:

"In concluding that the appellants therefore have standing to sue, we do not undermine the salutary principle, established by *Frothingham* and reaffirmed today, that a taxpayer may not 'employ a federal court as a forum in which to air his generalized grievances about the conduct of government or the allocation of power in the Federal System.' "

Therefore, it would appear that *Flast* is not available to plaintiffs as a basis for this action which has no constitutional implications, and is simply an action to test the regularity of the government administrative process in a contractual transaction. Therefore, this Court will not extend *Flast* to give standing to the plaintiffs to bring this action.

Plaintiffs also cite Copper Plumbing & Heating Co. v. Campbell, 110 U.S. App.D.C. 177, 290 F.2d 368 (1961), which involved a suit by a contractor against the Comptroller General seeking to declare unlawful a regulation under which the Comptroller General had barred the plaintiff from seeking government contracts. In that action the Court of Appeals for the District of Columbia held that the plaintiff had standing to sue, but that the Comptroller General had the power to make the regulations under the statute. The court distinguished the case from Perkins v. Lukens Steel Co., supra, on the basis that *Perkins* was an industry-wide and nation-wide regulation, whereas the regulation in the *Copper Plumbing & Heating Co.* case was a regulation directed specifically at one contractor designed to discipline that contractor. The regulations involved in the case at bar are general regulations applicable to all contracts, and therefore the form of the regulations would be controlled by the principles of Perkins v. Lukens Steel Co., supra. However, the alleged violation is that the government officers did not fairly conduct the bidding procedures, and therefore deprived the plaintiffs of a fair opportunity to bid on this job. This is almost precisely the situation indicated in Friend v. Lee, supra, and the long line of cases there listed in support of the proposition that a disappointed bidder cannot contest the award of a contract.

The relief sought by plaintiffs creates great policy problems and brings into play the distinctions between powers of government. It does not require much imagination to anticipate the chaos which would be caused if the bidding procedure under every government contract was subject to review by court to ascertain if it was fairly and properly done, and the corresponding damage and delay which would be done to government business if the injunctive power of the court was used to stay contractual activities pending judicial decision.

Therefore, the Court concludes that the evidence fails to establish that the plaintiffs have standing to sue, or that there is any strong likelihood that they would succeed in their action.

The Court further concludes that the evidence of irreparable injury is very slight when compared with the damage to the delaying of the government contract, and further that there has been no evidence to show that the public interest would not be harmed if the injunction were maintained in effect.

It is, therefore, ordered that the temporary restraining order heretofore issued by this Court be, and the same is hereby discharged.

It is further ordered that the application for a preliminary injunction be, and the same is hereby denied.